Matthew F. Miller, Bar No. 172661
matthew.miller@squirepb.com
Troy M. Yoshino, Bar No. 197850
troy.yoshino@squirepb.com
Eric J. Knapp, Bar No. 214352
eric.knapp@squirepb.com
**SQUIRE PATTON BOGGS (US) LLP**
275 Battery Street, Suite 2600
San Francisco, CA  94111
Telephone:     +1 415 954 0200
Facsimile:      +1 415 393 9887

Attorneys for Defendant
COINBASE, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES T. FAASSE, an Individual, JEFFREY HANSEN, an Individual, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>COINBASE, INC., a Delaware Corporation,<br><br>Defendant. | Case No. 3:18-cv-01382-JD<br><br>**DEFENDANT COINBASE, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Judge:  Hon. James Donato<br>Date:     August 30, 2018<br>Time:    10:00 a.m.<br>Crtrm:  11<br>Date Action Filed:        March 2, 2018 |

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

1

**NOTICE OF MOTION AND MOTION TO DISMISS**

2

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

3       NOTICE IS HEREBY GIVEN that on August 30, 2018 at 10:00 a.m. or as soon thereafter

4   as counsel may be heard, before the Honorable James Donato, in Courtroom 11 of the United

5   States Courthouse, located at 450 Golden Gate Avenue, San Francisco, California, Defendant

6   Coinbase, Inc. ("Coinbase") will and hereby does move the Court to dismiss the plaintiffs' First

7   Amended Class Action Complaint (the "FAC") in its entirety.  Specifically by this Motion:

8       1.      Pursuant to Fed. R. Civ. P. 12(b)(1), Coinbase seeks an order dismissing the FAC

9   in its entirety because plaintiffs lack standing to assert the claims alleged in the FAC;

10      2.      Pursuant to Fed. R. Civ. P. 8 and 12(b)(6), Coinbase seeks an order dismissing the

11  FAC in its entirety for failure to state a claim upon which relief can be granted.

12      This Motion is based on this Notice of Motion and Motion, the Memorandum of Points

13  and Authorities contained herein, the Declaration of Jesse Pollak in support, any reply papers that

14  may be submitted and on the arguments of counsel at any hearing that may be held, all of the

15  pleadings, files and records in this proceeding, and any such evidence as may later be submitted.

16

17   Dated:   July 6, 2018                         Respectfully submitted,

18                                                 SQUIRE PATTON BOGGS (US) LLP

19

20                                                 By:                /s/ Eric J. Knapp
                                                                    Eric J. Knapp
21
                                                   Attorneys for Defendant
22                                                 COINBASE, INC.

23

24

25

26

27

28

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

010-8645-6044/2/AMERICAS

1

## TABLE OF CONTENTS

2

PAGE

3

STATEMENT OF ISSUES TO BE DECIDED ................................................................ 1

4

INTRODUCTION ................................................................................................. 1

5

RELEVANT ALLEGATIONS AND FACTUAL BACKGROUND ............................................ 2

6

MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION ....................... 4

7

8

I.      Plaintiffs Have No Ownership or Other Legally Protected Interest in the Bitcoin,
        and Thus Lack Standing to Assert Claims Against Coinbase ................................. 5

9

II.     Plaintiffs Lack Standing to Seek Injunctive Relief Against Coinbase ..................... 7

10

MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM ........................................... 8

11

I.      Plaintiffs' Claims for Resulting Trust and Constructive Trust Are Not Cognizable
        Causes of Action ............................................................................................ 8

12

13

II.     Plaintiffs Fail to State a Conversion Claim Against Coinbase .............................. 9

14

        A.      Plaintiffs Fail to Allege Facts Showing Either Ownership of or a Right to
                Possession to the Bitcoin ...................................................................... 9

15

16

        B.      Plaintiffs Do Not Plead Facts Showing That Coinbase Substantially
                Interfered With Their Alleged Right to the Bitcoin ................................... 9

17

        C.      Plaintiffs' Conversion Claims Are Time-Barred ...................................... 10

18

III.    Plaintiffs Fail to State a UCL Claim Against Coinbase ..................................... 10

19

20

        A.      Plaintiffs Fail to Allege Facts Showing Coinbase Committed Any
                Unlawful Business Practices ................................................................ 10

21

        B.      Plaintiffs Fail to Allege Facts Showing That Coinbase Committed Any
                Unfair Business Practice ..................................................................... 12

22

23

        C.      Plaintiffs Have No Standing to Seek Restitution Under the UCL ................ 13

24

IV.     Plaintiffs' Negligence Claim Fails on Multiple Grounds ................................... 14

25

V.      Plaintiffs Fail To State a Claim for Declaratory Relief ...................................... 14

26

CONCLUSION ................................................................................................. 15

27

28

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

COINBASE'S MOTION TO DISMISS FAC - CASE NO. 3:18-CV-01382-JD

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

### TABLE OF AUTHORITIES

**Cases**

PAGE(S)

*Ariz. Christian Sch. Tuition Org. v. Winn*,
    563 U.S. 125 (2011) ..................................................................................................5

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................................8

*Backus v. General Mills*,
    122 F. Supp. 3d 909 (N.D. Cal. 2015) .....................................................................13

*Bardin v. DaimlerChrysler Corp.*,
    136 Cal. App. 4th 1255 (2006)..................................................................................12

*Bass v. Olson*,
    378 F.2d 818 (9th Cir. 1967)......................................................................................6

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ..................................................................................................8

*Bono v. Clark*,
    103 Cal. App. 4th 1409 (2002)..................................................................................10

*Boon Rawd Trading Int'l Co., Ltd. v. Paleewong Trading Co.*,
    688 F. Supp. 2d 940 (N.D. Cal. 2010) .......................................................................9

*State of California ex rel. Bowen v. Bank of Am. Corp.*,
    126 Cal. App. 4th 225 (2005)....................................................................................11

*Cabrera v. Countrywide Fin.*,
    2012 U.S. Dist. LEXIS 156310 (N.D. Cal. Oct. 30, 2012) ......................................11

*Cabrera v. Nationstar Mortg.*,
    2017 U.S. Dist. LEXIS 83429 (C.D. Cal. May 18, 2017).........................................14

*Cel-Tech Commc'ns Inc. v. Los Angeles Cellular Telephone Co.*,
    20 Cal. 4th 163 (1999) ..............................................................................................11

*Collins v. City of Colton*,
    2015 U.S. Dist. LEXIS 145123 (C.D. Cal. Oct. 19, 2015) ......................................10

*Contreras v. Toyota Motor Sales U.S.A., Inc.*,
    484 Fed. App'x 116 (9th Cir. 2012)...........................................................................4

*Cox Cable Communications, Inc. v. U.S.*,
    992 F.2d 1178 (11th Cir. 1993)..................................................................................5

COINBASE'S MOTION TO DISMISS FAC - CASE NO. 3:18-CV-01382-JD

010-8645-6044/2/AMERICAS

*Critchlow v. Critchlow*,
   2012 U.S. Dist. LEXIS 162977 (N.D. Cal. Nov. 14, 2012)....................................................10

*Ctr. for Sci. in the Pub. Interest v. Bayer Corp.*,
   2010 U.S. Dist. LEXIS 28292 (N.D. Cal. Mar. 25, 2010)....................................................15

*Davis v. HSBC Bank*,
   691 F.3d 1152 (9th Cir. 2012)..............................................................................................12

*Freeman v. Barnhart*,
   2007 U.S. Dist. LEXIS 39542 (N.D. Cal. May 16, 2007) ...................................................15

*Frempong v. Nat'l City Bank of Ind.*,
   452 Fed. App'x 167 (3d Cir. 2011).........................................................................................7

*Hamilton v. Bank of Blue Valley*,
   746 F. Supp. 2d 1160 (E.D. Cal. 2010).................................................................................12

*Hannes v. Conf. on Jewish Material Claims Against Germany, Inc.*,
   2012 U.S. Dist. LEXIS 125072 (S.D. Fla. Sept. 4, 2012).....................................................7

*HP Debt Exch., LLC v. Wells Fargo Bank, N.A.*,
   2014 U.S. Dist. LEXIS 149556 (N.D. Cal. Oct. 20, 2014) ....................................................9

*Ice Cream Distribs. of Evansville, LLC v. Dreyer's Grand Ice Cream, Inc.*,
   487 Fed. App'x 362 (9th Cir. 2012).......................................................................................13

*Itano v. Colonial Yacht Anchorage*,
   267 Cal. App. 2d 84 (1968)...................................................................................................10

*Ivie v. Kraft Foods Global, Inc.*,
   2015 U.S. Dist. LEXIS 5196 (N.D. Cal. Jan. 14, 2015) .......................................................13

*Jensen v. Quality Loan Serv. Corp.*,
   702 F. Supp. 2d 1183 (E.D. Cal. 2010).................................................................................15

*Larimer v. Konocti Vista Casino Resort, Marina & RV Park*,
   814 F. Supp. 2d 952 (N.D. Cal. 2011) ...................................................................................4

*Larson v. City of San Carlos*,
   2015 U.S. Dist. LEXIS 60182 (N.D. Cal. May 7, 2015) (Donato, J.) ....................................7

*Leids v. Metlife Home Loans*,
   2009 U.S. Dist. LEXIS 122147 (C.D. Cal. Dec. 7, 2009) .....................................................11

*Lewis v. Casey*,
   518 U.S. 343 (1996).................................................................................................................5

*Loeffler v. Target Corp*,
   58 Cal. 4th 1081 (2014)..........................................................................................................11

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

- iii -

010-8645-6044/2/AMERICAS

*Luttrell v. U.S.*,
　　644 F.2d 1274 (9th Cir. 1980)..................................................................................................15

*Matera v. Google Inc.*,
　　2016 U.S. Dist. LEXIS 130778 (N.D. Cal. Sept. 23, 2016).....................................................8

*Moore v. Regents of University of California*,
　　51 Cal. 3d 120 (1990) ..............................................................................................................9

*Morgan v. Morgan*,
　　220 Cal. App. 2d 665 (1963)....................................................................................................6

*Munns v. Kerry*,
　　782 F.3d 402 (9th Cir. 2015)....................................................................................................8

*Nelsen v. King County*,
　　895 F.2d 1248 (9th Cir. 1990)..................................................................................................7

*O'Bryan v. Holy See*,
　　556 F.3d 361 (6th Cir. 2009) ...................................................................................................5

*O'Shea v. Littleton*,
　　414 U.S. 488 (1974) .................................................................................................................5

*Ortho Mattress, Inc. v. Bedding Pros, LLC*,
　　2017 U.S. Dist. LEXIS 164858 (C.D. Cal. Sept. 29, 2017)...................................................11

*Ozeran v. Jacobs*,
　　2018 U.S. Dist. LEXIS 70543 (C.D. Cal. Apr. 25, 2018)......................................................13

*Pat's Marine Engines, Inc. v. Whitecap*,
　　2009 U.S. Dist. LEXIS 15773 (W.D. Wash. Feb. 27, 2009) ...............................................6, 7

*Phillips v. Apple, Inc.*,
　　2018 U.S. App. LEXIS 3997 (9th Cir. Feb. 20, 2018)...........................................................14

*In re Plaza Hotel Corp.*,
　　111 B.R. 882 (Bankr. E.D. Cal. 1990) .....................................................................................6

*Pom Wonderful LLC v. Welch Foods, Inc.*,
　　2009 U.S. Dist. LEXIS 123329 (C.D. Cal. Dec. 21, 2009) ...................................................13

*Press Rentals Inc. v. Genesis Fluid Solutions Ltd.*,
　　2012 U.S. Dist. LEXIS 124513 (N.D. Cal. Aug. 31, 2012)....................................................14

*Rapillo v. CitiMortgage, Inc.*,
　　2018 U.S. Dist. LEXIS 35491 (E.D.N.Y. Mar. 5, 2018) .........................................................7

*Thompson v. McCombe*,
　　99 F.3d 352 (9th Cir. 1996).....................................................................................................4

COINBASE'S MOTION TO DISMISS FAC - CASE NO. 3:18-CV-01382-JD

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

010-8645-6044/2/AMERICAS

*U.S. Rubber Co. v. Union Bank & Trust Co.*,
    194 Cal. App. 2d 703 (1961) ........................................................................................6

*Visa U.S.A., Inc. v. First Data Corp.*,
    2006 U.S. Dist. LEXIS 18482 (N.D. Cal. Mar. 2, 2006) ...........................................7

*Vt. Agency of Natural Res. v. U.S. ex rel. Stevens*,
    529 U.S. 765 (2000) ....................................................................................................5

*In re Wal-Mart Stores, Inc.*,
    505 F. Supp. 2d 609 (N.D. Cal. 2007) .......................................................................9

*Walker v. USAA Cas. Ins. Co.*,
    474 F. Supp. 2d 1168 (E.D. Cal. 2008), *aff'd sub nom. Walker v. Geico Gen.*
    *Ins. Co.*, 558 F.3d 1025 (9th Cir. 2009) ...................................................................13

*Watkinson v. MortgageIT, Inc.*,
    2010 U.S. Dist. LEXIS 53540 (S.D. Cal. June 1, 2010) .............................................8

**Statutes**

28 U.S.C. § 2201(a) .............................................................................................................14

California Code of Civil Procedure
    Section 335.1 ..............................................................................................................14
    Section 338(c) .............................................................................................................10

California Commercial Code
    Section 3408 .................................................................................................................6

Michigan Compiled Laws
    Section 440.3408 ..........................................................................................................6

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

- v -

## MEMORANDUM OF POINTS AND AUTHORITIES

## STATEMENT OF ISSUES TO BE DECIDED

1.   Whether plaintiffs lack Article III standing to assert claims against Coinbase.

2.   Whether plaintiffs failed to state a claim for resulting trust, constructive trust, conversion, violation of California's Unfair Competition Law, negligence, and for relief under the Declaratory Judgment Act.

## INTRODUCTION

In the opening paragraph of their initial Complaint ("Compl."), plaintiffs analogized a Coinbase account holder's offer to them to receive a fraction of a Bitcoin as the equivalent of a "check" for a sum of money sent in 2013, but a check they made no attempt to cash until *five years later*. Compl. ¶ 1.  Of course, Bitcoin is not quite the same as money, and defendant Coinbase, Inc. ("Coinbase") is not a bank, but this attempted analogy is nonetheless instructive to show why neither plaintiff ever had or has ownership of the Bitcoin—and therefore has no Article III standing to assert claims against Coinbase.

According to basic UCC principles – which both California and Michigan follow – a check does not operate to vest the intended payee with a property right to the funds in the checkwriter's bank account.  Similarly, the mere fact that plaintiffs were handed a theoretical "check" from a Coinbase user does not mean that they thereby have ownership rights to the Bitcoin in the user's Coinbase account.  As plaintiffs admit (*e.g.*, First Amended Compl. ("FAC") ¶ 19), they were told that they needed to take certain, affirmative steps to obtain ownership rights—and never did so.

Furthermore, no bank is required to honor a check that has gone "stale" for half a decade, and Coinbase likewise sets a 30-day limit for non-Coinbase users, like plaintiffs, to claim Bitcoin that actual Coinbase users attempt to transfer.  Plaintiffs know this, because Coinbase informed them *3 times* during the 30-day period that they needed to create a Coinbase account in order to claim the Bitcoin, and that they would not receive the Bitcoin if they did not claim it within that 30-day period.  Plaintiffs admit they "disregarded" those emails, so the offer to claim the Bitcoin accordingly expired on the 31st day following the initial email from the Coinbase user.  FAC ¶ 1. Five years later, plaintiffs have no ownership or other legally protected interest in the Bitcoin that

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

- 1 -

010-8645-6044/2/AMERICAS

they never claimed, and therefore lack standing to sue to recover that Bitcoin.

Plaintiffs also lack standing to seek injunctive relief against Coinbase, because they: (1) have no property right or other interest in the Bitcoin; and (2) allege that Coinbase's allegedly wrongful conduct does not apply to Coinbase users. Both plaintiffs allege that they intend to become Coinbase users in the future.

Plaintiffs fail to state any legally cognizable claim against Coinbase as well. Their first and second causes of action – for resulting trust and constructive trust – are not cognizable causes of action at all.

Plaintiffs' failure to state facts showing an ownership or possessory interest in the Bitcoin dooms their conversion claim; they never claimed the Bitcoin within the 30-day period, so it was never their property. And even if plaintiffs had such an ownership interest – they did not – none of Coinbase's alleged actions or inactions constitute a "substantial interference" of that interest. Finally, plaintiffs failed to assert their conversion claim within the statute of limitations.

Plaintiffs' UCL claims are also well past the statute of limitations, and they fail to plead any facts showing that Coinbase committed any "unlawful" or "unfair" business practices. In addition, plaintiffs' failure to state facts showing an ownership or other interest in the Bitcoin means that they lack standing under the UCL to seek restitution from Coinbase.

Plaintiffs' negligence claim fails because they do not allege facts showing that Coinbase owed any duty of care to them, and because their claim is time-barred.

Finally, plaintiffs' request for relief under the Declaratory Judgment Act is: (1) not a cognizable cause of action, (2) barred by their lack of standing, and (3) improperly duplicative of their other claims.

Because plaintiffs cannot allege facts giving rise to any claim, Coinbase respectfully requests that the Court dismiss all of plaintiffs' claims with prejudice.

## RELEVANT ALLEGATIONS AND FACTUAL BACKGROUND

Coinbase is a digital currency exchange that provides an online platform for the buying, selling, transferring, and storing of digital currency such as Bitcoin. Among other things, Coinbase provides a means for its users (*i.e.*, persons with Coinbase accounts) to propose

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

1  transfers of cryptocurrency between themselves, and between users and non-users.  FAC ¶ 12.

2  As plaintiffs allege, transfers of cryptocurrency between two Coinbase users results in an

3  automatic debit in the sender's account and an automatic credit to the recipient's account.  *Id.* ¶ 18.

4  In contrast, a Coinbase user who wishes to propose a transfer of cryptocurrency to a non-Coinbase

5  user must follow a series of steps that results in Coinbase sending an automatically generated email

6  to the intended recipient.  *Id.* ¶ 19.  The email states that: (1) a Coinbase user has proposed a

7  transfer of a certain amount of cryptocurrency, and; (2) the recipient of the email first must click on

8  a hyperlink in order to set up a Coinbase account and claim the cryptocurrency.  *Id.*  Plaintiffs both

9  allege that they received such an email in 2013 for 0.1 and 0.01 Bitcoin.  *Id*. ¶¶ 9-10.

10  However, plaintiffs admit that they "disregarded" the emails and declined to click on the

11  hyperlinks until February 2018 – nearly *five years* later.  *Id.* ¶¶ 1, 9-10.  They allege that the five-

12  year-old hyperlinks no longer worked when they clicked on them, but do not allege that Coinbase

13  deactivated the links or otherwise allege facts creating an obligation by Coinbase to maintain the

14  hyperlinks in perpetuity.  *Id.* ¶¶ 9-10, 20.  Plaintiffs also do not allege that they ever took any

15  other action to claim the Bitcoin, and admit they never claimed or possessed the Bitcoin.  *Id.* ¶ 1.

16  As shown in the accompanying declaration in support of Coinbase's motion to dismiss for

17  lack of subject matter jurisdiction asserting a factual challenge to plaintiffs' standing, peer-to-peer

18  transfers on Coinbase's system involve user-owned cryptocurrency; in other words, a user does

19  not "buy" or "order" Bitcoin from Coinbase to propose a transfer[1] to another user or non-user.

20  Declaration of Jesse Pollak ("Pollak Decl.") ¶ 8.  Non-users (such as plaintiffs) do not have a

21  right in perpetuity to claim cryptocurrency that users propose to transfer to them.  Thus, Coinbase

22  reminds non-Coinbase users like plaintiffs when they have 14 days remaining in order to create a

23  Coinbase account and claim the cryptocurrency.  *Id.* ¶ 11.  Non-Coinbase users like plaintiffs are

24  then informed a third and final time on the last day of the claim period that they must click on the

25  hyperlink or else the cryptocurrency will revert to the user.  *Id.* ¶ 12.  These procedures were in

26

27  [1] Because no property right is automatically granted to persons like plaintiffs, the Coinbase
system can be used to, *e.g*., propose contractual arrangements that are not agreed upon and
28  enforceable until and unless a proposed transfer is accepted.

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

1   effect and applicable to the proposed transfers of Bitcoin to the plaintiffs.  *Id.* ¶ 14.

2         In describing the process users go through to propose transfers of cryptocurrency to non-

3   users, plaintiffs insert in the FAC purported screenshots from a May 31, 2018 transfer of Bitcoin—

4   not the subject of any claim in this lawsuit—to imply, misleadingly, that Coinbase affirmatively

5   represents that "[t]here are no terms and conditions on the sender" of cryptocurrency.  *Id.* ¶¶ 14-15

6   (alleged statement located in the "Note" field of the screenshot); *see also id.* ¶¶ 14-17 (alleging no

7   fewer than ***four times*** that Coinbase users do not view any "terms, conditions, or other disclosures"

8   from Coinbase when attempting to transfer Bitcoin to a non-user).  However, Coinbase does ***not***

9   include that language or any other language in the "Note" field when a user is proposing to transfer

10  cryptocurrency – rather, as plaintiffs concede, the ***user*** "can enter a[ny] 'Note' [it wants to send] to

11  the recipient."  FAC ¶¶ 14-15; *see also* Pollak Decl. ¶ 17.  Thus, the Coinbase user who allegedly

12  transferred .001 Bitcoin to plaintiffs' counsel (support@restislaw.com) on May 31, 2018 was the

13  one who inserted that language, not Coinbase.   Pollak Decl. ¶ 17.[2]

14        Neither Faasse nor Hansen created a Coinbase account at any time.  *Id.* ¶ 19.  Coinbase

15  also has no records of either plaintiff contacting Coinbase at any time or for any reason.  *Id.* ¶ 20.

16  ## MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

17        Plaintiffs – as the parties seeking to invoke federal jurisdiction – "ha[ve] the burden of

18  proving the actual existence of subject matter jurisdiction."  *Thompson v. McCombe*, 99 F.3d 352,

19  353 (9th Cir. 1996).  Among other things, plaintiffs must establish their standing, and must

20  provide evidence of such standing when a defendant – such as Coinbase here – makes a factual

21  challenge.  *See Contreras v. Toyota Motor Sales U.S.A., Inc.*, 484 Fed. App'x 116, 118 (9th Cir.

22  2012) (affirming dismissal of complaint because "despite the fact that Toyota made a factual

23  challenge to standing, plaintiffs did not present evidence . . . to establish injury-in-fact, although it

24  was their burden to establish standing").  When evaluating a factual attack on standing, "the court

25  need not presume the truthfulness of the plaintiff's allegations."  *Larimer v. Konocti Vista Casino*

26

27  ---
    [2] Plaintiffs' bald assertion that there are no "terms, conditions, or other disclosures" from

28  Coinbase relating to transfers of cryptocurrency also ignores the plain language of Paragraph 3.2
    of the applicable User Agreement.  Pollak Decl. ¶ 18, Exh. A.

1    *Resort, Marina & RV Park*, 814 F. Supp. 2d 952, 954 (N.D. Cal. 2011).

2          Plaintiffs cannot seek relief for themselves or for a putative class if they cannot establish

3    their own standing to assert the claims made.  *See O'Shea v. Littleton*, 414 U.S. 488, 493-95

4    (1974).  "[N]amed plaintiffs . . . must allege and show that they have personally been injured, not

5    that injury has been suffered by other, unidentified members of the class to which they belong and

6    which they purport to represent."  *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (citation omitted).

7          To demonstrate standing, plaintiffs must show, among other things: (a) an invasion of a

8    legally protected interest that is "concrete and particularized" and "actual or imminent," as

9    opposed to "conjectural" or "hypothetical"; and (b) a causal connection between the injury and

10   the conduct complained about.  *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 134

11   (2011).  In assessing standing, the Court should reject conclusory or speculative allegations.

12   *O'Bryan v. Holy See*, 556 F.3d 361, 376 (6th Cir. 2009).

13   **I.    PLAINTIFFS HAVE NO OWNERSHIP OR OTHER LEGALLY PROTECTED INTEREST IN THE**

14   **BITCOIN, AND THUS LACK STANDING TO ASSERT CLAIMS AGAINST COINBASE**

15         Plaintiffs lack standing to assert claims against Coinbase because they have no legally

16   protected interest in the Bitcoin that they failed to claim in 2013; accordingly, their claims must

17   be dismissed with prejudice.

18         As they allege in the Complaint, each of the plaintiffs received an email from Coinbase

19   informing them that: (1) a Coinbase user had proposed transfers of fractions of Bitcoin; and (2) in

20   order to claim the Bitcoin, they first were required to click on a link in the email.  FAC ¶ 19.

21   Neither plaintiff followed these instructions, despite Coinbase reminding them several times

22   during the 30-day claim period to do so, and despite Coinbase informing them that they would be

23   unable to receive the Bitcoin if unclaimed after 30 days.  *Id.* ¶¶ 1, 9-10; Pollak Decl. ¶¶ 10-12.

24         Given these facts, plaintiffs do not have a property right or other legally protected interest

25   in the Bitcoin that they failed to claim in 2013, and they do not (and cannot) identify any law that

26   states otherwise.  *See, e.g., Vt. Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 772

27   (2000) (a legally protected interest "must consist of obtaining compensation for, or preventing,

28   the violation of a legally protected right"); *Cox Cable Communications, Inc. v. U.S.*, 992 F.2d

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

- 5 -

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

1178, 1182 (11th Cir. 1993) ("No legally cognizable injury arises unless an interest is protected by statute or otherwise."); *Pat's Marine Engines, Inc. v. Whitecap*, 2009 U.S. Dist. LEXIS 15773, at *4 (W.D. Wash. Feb. 27, 2009) ("[The claimant's] briefing alludes to 'a legally-protected interest that [is] derivative of his mother's rights to use and possession' . . . but he cites no statutory or case authority for the existence of such an interest or the validity of such a theory.").

There are a variety of reasons why an unclaimed Bitcoin transfer would not result in property rights vesting in the putative transferee.  For example, the transferee may have refused to accept the Bitcoin, for a variety of reasons such as declining to complete a contract (declining an offer), refusing a gift – or like plaintiffs here, disregarding communications and never making a timely and proper claim.  None of these circumstances – including the one alleged in this case – gives the transferee a legally protected interest in the Bitcoin.

In fact, the law governing checks – which plaintiffs alleged is the closest analogue to the attempted Bitcoin transactions at issue here – affirmatively states that alleged payees such as plaintiffs do ***not*** have a property right to funds in the checkwriter's account merely because they were handed a check.[3]  Because "[a] check is not an assignment of [ ] funds," there is accordingly "no property right vested in the payee . . . of the check and no liability arises on the part of the [bank]."  *U.S. Rubber Co. v. Union Bank & Trust Co.*, 194 Cal. App. 2d 703, 707 (1961); *see also Morgan v. Morgan*, 220 Cal. App. 2d 665, 676 (1963) (dismissing cause of action for failure to state a claim that is "based upon the theory that the banks were obligated to [plaintiff] upon the checks and that when they paid the amount of the checks upon unauthorized endorsements they paid out and thereby converted [plaintiff's] money").

---

[3] *See* Cal. Comm. Code § 3408 ("A check or other draft does not of itself operate as an assignment of funds in the hands of the [bank] available for its payment, and the [bank] is not liable on the instrument until the [bank] accepts it."); Michigan Compiled Laws § 440.3408 (same); *Bass v. Olson*, 378 F.2d 818, 820 (9th Cir. 1967) ("[U]nder governing California law, mere possession of an uncashed check is not equivalent to payment. . . . Similarly a check drawn on certain deposit in a bank does not operate as an equitable assignment of the deposit or any interest therein or part thereof.") (internal citation and quotation omitted); *In re Plaza Hotel Corp.*, 111 B.R. 882, 884 n.5 (Bankr. E.D. Cal. 1990) ("[A]rticles 3 and 4 of the Uniform Commercial Code teach that the mere delivery of a check is *not* sufficient to effect payment. . . . The check does not of itself operate as an assignment of funds in the drawer's account.  The bank is not liable on the check until it accepts it.") (emphasis in original).

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

1    Without an ownership or other legally protected interest in the Bitcoin, plaintiffs cannot

2 allege a cognizable injury-in-fact, and as a result have no standing to assert their claims against

3 Coinbase.  *See, e.g.*, *Visa U.S.A., Inc. v. First Data Corp.*, 2006 U.S. Dist. LEXIS 18482, at *27

4 (N.D. Cal. Mar. 2, 2006) ("[Plaintiff] lacked a legally sufficient property interest in the

5 trademarks to confer standing, [and therefore] there is no basis upon which [plaintiff] has suffered

6 an injury in fact, or 'an invasion of a legally protected interest.'"); *Frempong v. Nat'l City Bank*

7 *of Ind.*, 452 Fed. App'x 167, 171 (3d Cir. 2011) ("[Plaintiff] suffered no 'injury-in-fact' because

8 he had no legally protected interest in the property. . . . The record, without a doubt, establishes

9 that [plaintiff] has never been an owner of the property, that his name is not on the Deed, and that

10 he did not co-sign the mortgage note."); *Hannes v. Conf. on Jewish Material Claims Against*

11 *Germany, Inc.*, 2012 U.S. Dist. LEXIS 125072, at *12 (S.D. Fla. Sept. 4, 2012) ("Since Plaintiff

12 has no legally protected interest in the property at issue, Plaintiffs could not have suffered an

13 'injury in fact' from Defendants' conduct."); *Pat's Marine Engines*, 2009 U.S. Dist. LEXIS

14 15773, at *3-*4 ("Lacking ownership in the vessel at issue, [ ] Sekendur has no 'legally-protected

15 interest' subject to an injury which can be redressed by this Court.").

16    Accordingly, the Court should dismiss plaintiffs' claims with prejudice.  *See Larson v.*

17 *City of San Carlos*, 2015 U.S. Dist. LEXIS 60182, at *4 (N.D. Cal. May 7, 2015) (Donato, J.).

18 **II.    PLAINTIFFS LACK STANDING TO SEEK INJUNCTIVE RELIEF AGAINST COINBASE**

19    Plaintiffs' lack of an ownership or other interest in the Bitcoin they failed to claim means

20 that they lack standing to seek injunctive relief ordering payment of that Bitcoin – either to

21 themselves or to the State of California.  FAC ¶¶ 4, 79, Prayer for Relief; *see Rapillo v.*

22 *CitiMortgage, Inc.*, 2018 U.S. Dist. LEXIS 35491, at *27 (E.D.N.Y. Mar. 5, 2018) ("Plaintiff's

23 lack of standing [ ] precludes him from establishing any entitlement to injunctive relief.").

24    Plaintiffs also lack standing to seek injunctive relief "prohibiting Coinbase from

25 continuing these wrongful acts and omissions . . . ."  FAC ¶ 79.  Even if a plaintiff has suffered an

26 injury in the past, the plaintiff does not have standing to seek prospective relief unless he or she

27 faces the immediate threat of repeated injury.  *See Nelsen v. King County*, 895 F.2d 1248, 1251

28 (9th Cir. 1990).  "Allegations that a defendant's conduct will subject unnamed class members to

- 7 -

the alleged harm is insufficient to establish standing to seek injunctive relief on behalf of the class." *Matera v. Google Inc.*, 2016 U.S. Dist. LEXIS 130778, at *42 (N.D. Cal. Sept. 23, 2016).

According to plaintiffs, Coinbase's alleged wrongful conduct does not affect Coinbase users, because cryptocurrency that users receive from other users is "automatically deposited into the recipient's Coinbase account." FAC ¶ 18 ("As such, these persons are not members of the Class."); *see also* Pollak Decl. ¶ 9. Both plaintiffs allege that they intend to become Coinbase users, FAC ¶¶ 9-10, which means that they will not have to take any action to accept Bitcoin from a Coinbase user within a certain time period. Thus, plaintiffs fail to show that "[t]he[y] will again be wronged in a similar way" by Coinbase. *Munns v. Kerry*, 782 F.3d 402, 411 (9th Cir. 2015). Accordingly, the Court should dismiss plaintiffs' claims for injunctive relief with prejudice. *Matera*, 2016 U.S. Dist. LEXIS 130778, at *45-*46.

## MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

In addition to the fact that plaintiffs have not pled a justiciable case, plaintiffs fail to plead facts sufficient to create a "reasonable inference that [Coinbase] is liable for the [ ] conduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The factual allegations in the Complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### I. PLAINTIFFS' CLAIMS FOR RESULTING TRUST AND CONSTRUCTIVE TRUST ARE NOT COGNIZABLE CAUSES OF ACTION

Plaintiffs' first and second causes of action for resulting trust and constructive trust are not cognizable causes of action. *See Watkinson v. MortgageIT, Inc.*, 2010 U.S. Dist. LEXIS 53540, at *27 (S.D. Cal. June 1, 2010) ("[N]either a 'constructive trust' nor a 'resulting trust' is an independent cause of action; rather, each of these is merely a type of a *remedy*."). Even if those "causes of action" could be read as requests for relief, plaintiffs fail to allege any cause of action that entitles them to seek such relief. FAC ¶¶ 30, 42 (alleging that the resulting and constructive trust "causes of action" incorporate only Paragraphs 1-29 of the FAC, which do not contain any other cause of action). As such, these claims must be dismissed with prejudice. *See Watkinson*,

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

- 8 -

2010 U.S. Dist. LEXIS 53540, at *28.

## II.  PLAINTIFFS FAIL TO STATE A CONVERSION CLAIM AGAINST COINBASE

### A.  Plaintiffs Fail to Allege Facts Showing Either Ownership of or a Right to Possession to the Bitcoin

Plaintiffs fail to state a conversion claim against Coinbase because they fail to allege facts showing that they have "ownership or right to possession of" the Bitcoin at issue. *Boon Rawd Trading Int'l Co., Ltd. v. Paleewong Trading Co.*, 688 F. Supp. 2d 940, 954 (N.D. Cal. 2010).

Plaintiffs admit that they never possessed the Bitcoin at issue. FAC ¶ 1 ("Plaintiffs and the Class never took custody of their Cryptocurrency.").  Plaintiffs also admit that they failed to perfect either an ownership right or right of possession to the Bitcoin; as they allege, they "disregarded" the emails from Coinbase informing them how to claim the Bitcoin, and accordingly declined to accept the Bitcoin. *Id.* ¶¶ 1, 9-10.  Plaintiffs plead no facts showing that they own or otherwise have a right to possession of the Bitcoin they failed to claim five years ago.

Plaintiffs' failure to allege facts showing an ownership interest or actual possession of the Bitcoin means that their conversion claims fail as a matter of law.  *See Moore v. Regents of University of California*, 51 Cal. 3d 120, 136 (1990) ("Where plaintiff neither has title to the property alleged to have been converted, nor possession thereof, he cannot maintain an action for conversion."); *HP Debt Exch., LLC v. Wells Fargo Bank, N.A.*, 2014 U.S. Dist. LEXIS 149556, at *13 (N.D. Cal. Oct. 20, 2014) ("[C]onversion requires a right to possession, whereas Plaintiff faced several intervening steps before redemption could occur . . . .").

### B.  Plaintiffs Do Not Plead Facts Showing That Coinbase Substantially Interfered With Their Alleged Right to the Bitcoin

The Court should also dismiss plaintiffs' conversion claims because they fail to allege facts showing that Coinbase substantially interfered with their alleged property right to the Bitcoin. *See In re Wal-Mart Stores, Inc.*, 505 F. Supp. 2d 609, 618 (N.D. Cal. 2007) ("A claim for conversion properly lies where there is substantial interference with possession of the property or the right to it.").

Far from substantially interfering with plaintiffs' alleged right to claim the Bitcoin,

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

1  Coinbase repeatedly reminded plaintiffs that they could take possession of the Bitcoin by clicking

2  an email-embedded hyperlink within the claim period and opening a Coinbase account.  And

3  plaintiffs' allegation that Coinbase "kept, and continues to keep" their unclaimed Bitcoin is not

4  enough to constitute "substantial interference," because they do not and cannot plead facts

5  showing that Coinbase intended to exercise control or ownership of the Bitcoin.  FAC ¶ 21; *see*

6  *Collins v. City of Colton*, 2015 U.S. Dist. LEXIS 145123, at *22-*23 (C.D. Cal. Oct. 19, 2015)

7  (defendant's holding of plaintiff's truck in impoundment lot did not constitute "substantial[ ]

8  interfere[nce] with [plaintiff's] rights to the truck and therefore does not constitute a conversion"

9  because defendant "made no attempt to use the truck or exercise ownership over it").

10     Because plaintiffs do not allege any facts supporting their bare, conclusory allegation that

11  Coinbase substantially interfered with their alleged right to the Bitcoin, and do not plead facts

12  showing that Coinbase "exercise[d] dominion and control over" the Bitcoin, their conversion

13  claim must be dismissed.  FAC ¶ 59; *see Itano v. Colonial Yacht Anchorage*, 267 Cal. App. 2d

14  84, 89 (1968) ("The act of removing personal property from one place to another, without an

15  assertion of ownership or preventing the owner from exercising all rights of ownership in such

16  personal property, is not enough to constitute a conversion.").

17        **C.      Plaintiffs' Conversion Claims Are Time-Barred**

18     Plaintiffs also failed to file their conversion claim against Coinbase within the applicable

19  three-year statute of limitations.  *See Critchlow v. Critchlow*, 2012 U.S. Dist. LEXIS 162977, at *33

20  (N.D. Cal. Nov. 14, 2012) (citing Cal. Code Civ. Proc. § 338(c)).  Plaintiffs' conversion claim

21  accrued as soon as Coinbase allegedly committed a "wrongful taking" of the Bitcoin.  *Bono v.*

22  *Clark*, 103 Cal. App. 4th 1409, 1433 (2002) ("[T]he statute of limitations for conversion is triggered

23  by the act of wrongfully taking property.").  Because plaintiffs allege that the "wrongful taking"

24  occurred in 2013, *see* FAC ¶¶ 9-10 & 58, their conversion claims are time-barred.

25  **III.   PLAINTIFFS FAIL TO STATE A UCL CLAIM AGAINST COINBASE**

26        **A.      Plaintiffs Fail to Allege Facts Showing Coinbase Committed Any Unlawful Business Practices**

27

28     Plaintiffs fail to plead facts showing that Coinbase violated any law supporting a claim for

- 10 -

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

1   "unlawful" business practices.  The "unlawful" prong of the UCL prohibits business practices

2   "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or

3   court-made."  *Leids v. Metlife Home Loans*, 2009 U.S. Dist. LEXIS 122147, at *14 (C.D. Cal.

4   Dec. 7, 2009).  Thus, in order to state a claim for an "unlawful" business practice, plaintiffs must

5   properly plead that Coinbase violated another law.  *See Cel-Tech Commc'ns Inc. v. Los Angeles*

6   *Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999).

7          As discussed in Section II *supra*, plaintiffs do not adequately allege that Coinbase

8   committed conversion.  Plaintiffs also fail to bring their UCL claim based on Coinbase's alleged

9   conversion within the four-year statute of limitations.  *See Cabrera v. Countrywide Fin.*, 2012

10  U.S. Dist. LEXIS 156310, at *15 (N.D. Cal. Oct. 30, 2012) (dismissing UCL claim filed more

11  than four years after the cause of action accrued).

12         Plaintiffs' UCL "unlawful" claim based on Coinbase's alleged violation of California's

13  Unclaimed Property Law ("UPL") should be dismissed based on the analysis set forth in *Loeffler*

14  *v. Target Corp*.  In that case, the California Supreme Court dismissed a UCL "unlawful" claim

15  predicated on an alleged violation of the California tax code because "permitting plaintiffs to use

16  the UCL . . . to challenge [defendant's conduct] is inconsistent with the tax code provisions

17  relating to the sales tax, particularly in light of the primary role assigned to the Board [of

18  Equalization] with regard to the resolution of sales tax issues . . . ."  58 Cal. 4th 1081, 1123

19  (2014); *see also Ortho Mattress, Inc. v. Bedding Pros, LLC*, 2017 U.S. Dist. LEXIS 164858, at

20  *6-*7 (C.D. Cal. Sept. 29, 2017) ("A decision in favor of Plaintiff here would require the Court to

21  conclude that Defendants were improperly failing to collect a 'use tax'. . . . As *Loeffler* instructs,

22  the courts are not to resolve the issue in the first instance.").  Plaintiffs' UCL claims should be

23  dismissed on the same grounds – namely, the UPL is a comprehensive and intricate statutory

24  scheme that places the responsibility for its enforcement solely in the hands of the State

25  Controller, and plaintiffs should not be permitted to bypass that scheme.  *See, e.g.*, *State of*

26  *California ex rel. Bowen v. Bank of Am. Corp.*, 126 Cal. App. 4th 225, 245-46 (2005) (affirming

27  dismissal of False Claims Act claim that "sought to use the UPL as the hook for imposing reverse

28  false claims liability for violations that are not even punishable under the UPL unless the violator

- 11 -

1   is given notice [by the State Controller] and an opportunity to correct the alleged violations").

2   Because Coinbase's alleged conversion and violation of the UPL are the only underlying

3   "violations" of law that are alleged, *see* FAC ¶¶ 74-75, plaintiffs' UCL claim based on an

4   unlawful business practice fails. *See Hamilton v. Bank of Blue Valley*, 746 F. Supp. 2d 1160,

5   1179-80 (E.D. Cal. 2010) (dismissing UCL claim where plaintiffs failed to plead a requisite

6   violation of law).

7   **B.   Plaintiffs Fail to Allege Facts Showing That Coinbase Committed Any Unfair
            Business Practice**

8

9   Plaintiffs also fail to allege any facts showing Coinbase committed any "unfair" business

10  practices. There is currently a split in authority over what constitutes an "unfair" business

11  practice in consumer cases. *See Davis v. HSBC Bank*, 691 F.3d 1152, 1169-71 (9th Cir. 2012)

12  (noting split in authority). Nonetheless, plaintiffs' allegations fail to show that Coinbase's

13  conduct was "unfair" under either definition.

14  First, plaintiffs do not allege facts showing that Coinbase's conduct fails the "balancing

15  test" for unfair conduct, which requires an evaluation of the alleged practice's "impact on its

16  alleged victim, balanced against the reasons, justifications, and motives of the alleged wrongdoer"

17  to determine whether the alleged practice is "unfair" within the meaning of the UCL. *Bardin v.*

18  *DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1263 (2006). Plaintiffs' claim that "the gravity

19  of the harm to Plaintiffs and the Class outweighs any countervailing benefits to Defendant or to

20  competition" is a conclusory allegation that is insufficient to support a claim for unfair business

21  practices. FAC ¶ 76 (iv); *Davis*, 691 F.3d at 1170-71.

22  Plaintiffs also do not allege facts showing that Coinbase's conduct violates the "tethering

23  test," which requires a claim for unfair business practices to be "tethered to specific constitutional,

24  statutory, or regulatory provisions." *Bardin*, 136 Cal. App. 4th at 1261. Here, plaintiffs offer only

25  the conclusory allegation that Coinbase's alleged conduct "violates established public policy as

26  embodied in California's Unclaimed Property Law, and the California public policies against

27  forfeitures." FAC ¶ 76 (ii); *Davis*, 691 F.3d at 1170-71. Furthermore, and as discussed above,

28  plaintiffs fail to plead that Coinbase's conduct violated the UPL or any other statutory law.

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

- 12 -

Plaintiffs also cannot properly state a UCL "unfair" claim on the grounds that Coinbase's alleged conduct violates the "section 5 test." FAC ¶ 76(i) (alleging that "the injury to Plaintiffs and the Class outweighs any countervailing benefits to consumers or to competition, and because such injury could not be reasonably avoided"). "[T]he Ninth Circuit has rejected the use of the [section 5] test in the consumer context, because the California Supreme Court discussion regarding that test clearly revolves around anti-competitive conduct, rather than anti-consumer conduct." *Backus v. General Mills*, 122 F. Supp. 3d 909, 929 (N.D. Cal. 2015).

### C. Plaintiffs Have No Standing to Seek Restitution Under the UCL

Plaintiffs' failure to state facts showing that they either possessed or have a legal interest in the Bitcoin at issue means that they lack standing to seek restitution under the UCL. Although plaintiffs seek "disgorgement of all improperly retained Cryptocurrencies," FAC ¶ 79, "nonrestitutionary disgorgement is not a remedy under the UCL." *Ivie v. Kraft Foods Global, Inc.*, 2015 U.S. Dist. LEXIS 5196, at *4 (N.D. Cal. Jan. 14, 2015).

Plaintiffs have standing to seek restitution under the UCL only if they show that they have "lost money or property as a result of [the alleged] unfair competition." *Pom Wonderful LLC v. Welch Foods, Inc.*, 2009 U.S. Dist. LEXIS 123329, at *5 (C.D. Cal. Dec. 21, 2009). To establish "loss of money or property," a plaintiff must have "prior possession or a vested legal interest in the money or property lost." *Walker v. USAA Cas. Ins. Co.*, 474 F. Supp. 2d 1168, 1172 (E.D. Cal. 2008), *aff'd sub nom. Walker v. Geico Gen. Ins. Co.*, 558 F.3d 1025 (9th Cir. 2009).

As discussed in Section II.A *supra*, plaintiffs fail to allege any facts showing either prior possession or a vested legal interest in the Bitcoin; they therefore lack standing to seek restitution under the UCL. *See Ice Cream Distribs. of Evansville, LLC v. Dreyer's Grand Ice Cream, Inc.*, 487 Fed. App'x 362, 363 (9th Cir. 2012) (affirming dismissal of UCL claim because plaintiff "does not allege that [defendant] took money or property directly from [plaintiff], nor does it claim a vested interest in the money it seeks to recover").

Furthermore, plaintiffs' inability to obtain injunctive relief (*see supra*) means that they have no available remedies under the UCL. *See Ozeran v. Jacobs*, 2018 U.S. Dist. LEXIS 70543, at *19 (C.D. Cal. Apr. 25, 2018) ("[R]estitution and injunctive relief are the only remedies

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

- 13 -

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

1   available under the UCL").  Thus, the Court should dismiss their UCL claim with prejudice.  *See*

2   *Phillips v. Apple, Inc.*, 2018 U.S. App. LEXIS 3997, at *3-*4 (9th Cir. Feb. 20, 2018).

3   **IV.    PLAINTIFFS' NEGLIGENCE CLAIM FAILS ON MULTIPLE GROUNDS**

4          Plaintiffs fail to state a negligence claim because they do not state facts showing that

5   Coinbase owed them any duty of care.  Plaintiffs' allegation that Coinbase "solicited and

6   encouraged Coinbase users to use [Coinbase's] service to send Cryptocurrencies" and thereby

7   "assumed a duty to exercise reasonable care to accomplish such grant and transfer," FAC ¶ 82,

8   may show that Coinbase owed a duty of care to *its users*, but not to third parties like plaintiffs.

9   *See Press Rentals Inc. v. Genesis Fluid Solutions Ltd.*, 2012 U.S. Dist. LEXIS 124513, at *20

10  (N.D. Cal. Aug. 31, 2012) (dismissing negligence claim against defendant bank because plaintiffs

11  "fail to allege facts showing that [the bank] owed them a duty of care, because they have not

12  alleged sufficient facts showing that they were [the bank's] customers . . . or that they had any

13  contractual relationship with [the bank] . . . .").

14         Furthermore, plaintiffs failed to bring their negligence claim within the two-year statute of

15  limitations, because they filed their initial Complaint nearly *five years* after receiving emails from

16  Coinbase informing them of the attempted transfers.  Cal. Code Civ. Proc. § 335.1; FAC ¶ 83

17  (alleging that "Coinbase breached its duty of care to Plaintiffs and the Class by failing to

18  accomplish the grant and transfer of Cryptocurrencies to them").

19  **V.    PLAINTIFFS FAIL TO STATE A CLAIM FOR DECLARATORY RELIEF**

20         Plaintiffs' claim for declaratory relief under the Declaratory Judgment Act fails because

21  "[d]eclaratory relief is not an independent cause of action, but a remedy that must be based upon

22  some other viable legal claim."  *Cabrera v. Nationstar Mortg.*, 2017 U.S. Dist. LEXIS 83429, at

23  *7-*8 (C.D. Cal. May 18, 2017).

24         Furthermore, plaintiffs' request for declaratory relief pursuant to the Declaratory

25  Judgment Act is barred by their lack of Article III standing.  *See* Motion to Dismiss for Lack of

26  Subject Matter Jurisdiction *supra*.  The Declaratory Judgment Act authorizes courts to "declare

27  the rights and other legal relations of any interested party seeking such declaration" so long as the

28  declaration is sought "in a case of actual controversy within [the Court's] jurisdiction."  28 U.S.C.

- 14 -

§ 2201(a).  However, the Act does not provide an independent basis for subject matter jurisdiction.  *See Luttrell v. U.S.*, 644 F.2d 1274, 1275 (9th Cir. 1980) ("28 U.S.C. §§ 2201 and 2202 create additional remedies in the form of declaratory judgment relief for federal litigants, but do not in and of themselves confer subject matter jurisdiction on the courts.").  In other words, plaintiffs cannot confer subject matter jurisdiction to the Court by requesting declaratory relief to establish their standing.  *See Freeman v. Barnhart*, 2007 U.S. Dist. LEXIS 39542, at *4 (N.D. Cal. May 16, 2007) ("To the extent Plaintiff relies on the Declaratory Judgment Act, 28 U.S.C. § 2201-02, to provide jurisdiction, Plaintiff's reliance is misplaced.").  Without such Article III standing, there is no "case or controversy" between the parties and therefore no jurisdiction for the Court to consider plaintiffs' request for declaratory relief.  *See Ctr. for Sci. in the Pub. Interest v. Bayer Corp.*, 2010 U.S. Dist. LEXIS 28292, at *12 (N.D. Cal. Mar. 25, 2010) ("Because . . . [plaintiff] lacks standing to assert its [ ] claims, there is no jurisdiction to hear the declaratory relief claim as there is alleged no case or controversy between the parties.").

Finally, "[c]ourts have recognized that where a party has a fully matured cause of action for money, the party must seek the remedy of damages, and not pursue a declaratory relief claim." *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1189 (E.D. Cal. 2010); *see also id.* ("Plaintiff's separate declaratory relief claim should not be used, as here, to determine identical issues subsumed within other claims.").  Because resolution of plaintiffs' other substantive claims will necessarily determine plaintiffs' "rights and legal relations to the Cryptocurrencies that are the subject of this Complaint," FAC ¶ 86, plaintiffs' claim for declaratory relief is improperly "superfluous" and must therefore be dismissed.  *Jensen*, 702 F. Supp. 2d at 1189.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the FAC with prejudice.

Dated:  July 6, 2018

SQUIRE PATTON BOGGS (US) LLP

By: _____/s/ Eric J. Knapp_____
Eric J. Knapp

Attorneys for Defendant
COINBASE, INC.